This is an action to have plaintiff's claim against the Bank of Pee Dee, now in the hands of the defendant, Gurney P. Hood, Commissioner of Banks, for liquidation because of its insolvency, adjudged a preference in the administration of the assets of said bank, on the ground that the funds deposited by the plaintiff with said bank, and in its possession at the date of its insolvency, were trust funds, and for that reason did not pass into the possession of the defendant as general assets of the insolvent bank.
The action was heard on a demurrer to the complaint on the ground that the facts stated therein are not sufficient to constitute a cause of action for a preferential claim against the assets of the Bank of Pee Dee, now in the possession of the defendant, Gurney P. Hood, Commissioner of Banks, for liquidation under the provisions of chapter 113, Public Laws of North Carolina, 1927, as amended.
The facts alleged in the complaint, and admitted by the demurrer are as follows:
1. Some time prior to the month of January, 1930, the plaintiff deposited with the Bank of Pee Dee certain funds, which at his request were credited on the books of said bank, as follows: *Page 141 
W. T. Williams, guardian for John Skelton
Williams, Jr ...................................... $1,401.39
W. T. Williams, guardian for W. T. Williams, Jr. ..... $1,458.29
W. T. Williams, special account ...................... $2,041.03
W. T. Williams, checking account ..................... $1,015.63
2. During the month of January, 1930, because of his apprehension as to the financial condition of the Bank of Pee Dee, the plaintiff decided to withdraw from said bank the sum of $5,000, and to invest said sum in bonds of the United States or of the State of North Carolina. In consequence of this decision, the plaintiff signed blank checks, drawn on the Bank of Pee Dee, and sent said checks, with his pass books, to said bank, with instructions, in writing, to its officers to fill in the blanks in said checks, so that the aggregate amount of said checks would be $5,000, to charge said checks, when filled out in accordance with plaintiff's instructions, to his accounts, and to purchase with the proceeds of said checks bonds of the United States or of the State of North Carolina. The plaintiff further instructed said officers of the Bank of Pee Dee to hold said bonds, when purchased in accordance with his instructions, for him.
Within a few days after the Bank of Pee Dee had received said checks, pass books and written instructions from the plaintiff, its president called to see him, and urged him to withdraw said instruction with respect to the purchase of said bonds. In consequence of his conversation with said president, plaintiff withdrew said instructions, and the checks, pass books and written instructions were returned to plaintiff by the president of the Bank of Pee Dee.
3. On or about 1 October, 1930, the plaintiff again delivered to the Bank of Pee Dee the checks, pass books, and written instructions which had been returned to him by the president of the said bank, and insisted that said bank comply at once with his instructions with respect to the purchase of said bonds. Within a few days thereafter, the president of the Bank of Pee Dee again called to see the plaintiff. At this time the said president agreed to comply with plaintiff's instructions, and to purchase the said bonds for him. Thereafter the plaintiff was confined to his home by reason of illness, and was unable to call at the bank until after 8 December, 1930. During this time, he relied upon the promise of the president of the Bank of Pee Dee that said bank would purchase for him the bonds in accordance with his instructions.
4. On 8 December, 1930, the Bank of Pee Dee closed its doors and ceased to do business, because of its insolvency. At said date, the bank *Page 142 
had in its vaults the sum of $8,405.51, in currency, and in its possession cash items due from other banks, amounting to the sum of $24,877.54. This currency and these cash items passed into the possession of the defendant as assets of the Bank of Pee Dee.
5. Within a few days after the Bank of Pee Dee ceased to do business, the plaintiff was advised by its cashier that said bank had not purchased the bonds for the plaintiff as it agreed to do, and had not charged plaintiff's accounts with said bank with any sums on account of the blank checks which plaintiff had sent to said bank on or about 1 October, 1930.
6. Before the commencement of this action, the plaintiff filed his claim against the Bank of Pee Dee with the defendant, and prayed that said claim be allowed as a preference in the administration by the defendant of the assets of said bank. This prayer was denied.
The demurrer was overruled, and the defendant, Gurney P. Hood, Commissioner of Banks, appealed to the Supreme Court.
The relationship between the plaintiff and the Bank of Pee Dee, with respect to the funds deposited by the plaintiff with said bank, prior to 1 January, 1930, was that of creditor and debtor. These funds were not trust funds at the dates they were deposited with the bank by the plaintiff. No facts are alleged in the complaint which show or from which it can be reasonably inferred that said funds constituted a special deposit for a special purpose. Parker v. Trust Co., 202 N.C. 230, 162 S.E. 564. Nor are any facts alleged in the complaint which show or from which it can reasonably be inferred that said funds after they were deposited became trust funds. The relationship between the plaintiff and the bank, as creditor and debtor, with respect to said funds, was not changed or altered by the agreement of the bank to purchase bonds for the plaintiff, and to pay for said bonds out of said funds. Blakey v. Brinson, 286 U.S. 254,76 L.Ed., 1089.
There was error in the judgment overruling the demurrer. The demurrer should have been sustained. The judgment is
Reversed. *Page 143