## John C. Anderson and Effie A. Mounts, Partners, etc., v. The Alton National Bank.

1. PRINCIPAL AND AGENT—*Power to Appoint Sub-Agents.*—If one person constitutes another his agent, to do a business which obviously, and from its very nature. can not be done by such agent otherwise than through a substitute, or if there exists in relation to that business, a known and established usage of substitution, in either case, the principal will be held to have expected and authorized such substitution, and a substitute appointed by an agent who has this power of substitution, becomes the agent of the original principal.

2. BANKS—*As Collecting Agents—Power of Substitution.*—Where a bill of exchange, payable at a distant place, is deposited in a bank for collection, and the bank undertakes only to transmit the bill to a responsible and proper agent, either in the place where the collection is to be made, or in the place nearest thereto where it has a correspondent or an agent whom it thinks fit to employ for the purpose, with proper instructions for its collection, its duty is discharged.

3. SAME—*As Collecting Agents—Responsibility.*—Where a bank receives a note or a bill of exchange for collection against a maker or drawee, resident at the place of the bank, or where the bank undertakes its collection by its own officers, the bank will be liable for any loss which may occur from neglect; but when received for transmission to another place, it fully discharges its duty by sending the same in due season to a competent and reliable agent or correspondent, with proper instructions for its collection.

Assumpsit.—Breach of an undertaking to collect checks. Appeal from the Circuit Court of Madison County; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding. Heard in this court at the February term, 1895. Affirmed. Opinion filed July 1, 1895.

### STATEMENT OF THE CASE.

This was an action of assumpsit, brought by appellants against appellee, which was tried by the court by agreement, and a finding for defendant and judgment in its favor for costs resulted. Plaintiffs took this appeal.

The declaration consisted of three counts, and the right to recover is predicated upon the negligence of defendant in failing to use care and diligence in endeavoring to collect two checks sent them for collection by plaintiffs, and holding the same for an unreasonable length of time and until the bank upon which they were drawn had failed, as charged in the first count; in failing to use care and diligence in collecting said checks, and negligently suffering the same to be surrendered to said bank without receiving the money due plaintiffs for said checks, but taking in payment thereof certain other commercial paper of no value, without plaintiffs' knowledge or consent, as charged in the second count; in failing to return said checks, or the money therefor, to plaintiffs, as charged in the third count.

One of the checks in question was dated May 6, 1895, at Gillespie, Ill., drawn on the Citizens Bank of that place, for $165, payable to T. N. Mitchell, signed by W. T. Mitchell, indorsed by payee to plaintiffs. The other, a check for $248, was dated May 16, 1893, drawn on the same bank, signed by E. T. Rice, payable to Wm. Guetter, and indorsed by him to plaintiffs. They were received by plaintiffs on June 1, 1893, and on the same day were sent to defendant for collection, and the receipt thereof was acknowledged the next day, and the account of plaintiffs with defendant bank credited with the amount of the two checks, and on the same day defendant sent them to its correspondent, the Fourth National Bank of St. Louis, for collection, and the account of defendant with the latter bank was credited in like manner. The checks were sent by the Fourth National Bank

to the Citizens Bank at Gillespie, the drawee, and that bank, on June 7, 1893, sent its draft on the National Bank of the Republic of St. Louis, covering the amount thereof, payable to the cashier of the Fourth National Bank. This draft was protested for non-payment on June 9, 1893, and the Gillespie bank failed on the 8th of June, 1893. On June 10, 1893, the account of defendant with Fourth National Bank was debited with the amount of the two checks, and defendant advised thereof, and the account of plaintiffs with defendant was also debited with the like amount. The checks were not returned to plaintiffs, but the draft was, and plaintiffs refused to retain it. Plaintiffs did a banking business at Carlinville, Illinois, and for a period of twenty years had kept an account with defendant and sent it drafts and checks on other banks for collection, and indorsed the same " for collection," and on receipt of same, plaintiffs' account was credited therewith. There was no charge for collecting, and it was understood by the parties, where such credit had been given but defendant subsequently failed to collect, that the amount should be made a debit on said account. Gillespie is sixteen or eighteen miles from Carlinville, and there was a daily mail from the latter place to Gillespie and back, by way of Alton. Alton is about forty miles from Carlinville and twenty miles from Gillespie. Plaintiffs' cashier testified it was the custom of plaintiffs not to send checks for collection to the drawee bank unless requested to do so by the parties who left them with plaintiffs. That plaintiffs had city correspondents at Springfield, Alton, three in St. Louis, one in Chicago and one in New York, and in case they had no correspondent at the domicile of the drawee bank, it was their custom to send checks for collection to one of their city correspondents, for the reason they frequently collected at par where plaintiffs could not, and the checks in question were sent to defendant because plaintiffs thought it could more conveniently collect than plaintiffs could. It thus appears defendant did as it was the custom to do in like cases, and precisely that which plaintiffs might have expected would be done, St Louis being the clearing point for all banking

business of the country around it, including Alton, Carlin-
ville and Gillespie. Plaintiffs also knew there was no other
bank at Gillespie beside the drawee bank, and defendant had
no correspondent at that place.

ANDERSON & BELL, attorneys for appellants.

JOHN G. IRWIN and LEVI DAVIS, Jr., attorneys for ap-
pellee.

MR. JUSTICE GREEN DELIVERED THE OPINION OF THE COURT.

Appellant contends: Under the facts as disclosed in this
record, appellee had no authority to appoint a sub-agent to
transmit and collect the checks in question and if it did so
it assumed the risk and consequences of such sub-agent's
negligence and must respond in damages to plaintiffs for
any loss thereby occasioned. If a principal constitutes an
agent to do a business which obviously and from its very
nature can not be done by the agent otherwise than through
a substitute, or if there exists in relation to that business
a known and established usage of substitution, in either
case, the principal will be held to have expected and have
authorized such substitution, and a substitute appointed by
an agent who has this power of substitution becomes the
agent of the original principal, and may bind him by his
acts, and is responsible to him as his agent. 1 Parsons on
Contracts, Sec. 94.

Where a bill of exchange, payable at a distant place, is de-
posited in a bank for collection, that bank undertakes only
to transmit to a responsible and proper agent, either in the
place where the collection is to be made, or in the place
nearest thereto where it has a correspondent, or an agent
whom it thinks fit to employ for the purpose of forwarding.
It is incredible to suppose, where there is no commission
charged, that the bank to which the draft or check is first
sent for collection, is understood, either by it or the holder,
to be responsible for the solvency, good conduct and thor-
ough performance of their duties on behalf of all subse-

quent agents whom it may be necessary to employ. The ordinary usage of business requires such bank to do nothing more than forward to a suitable and solvent agent, as above stated, and this is all the bank or custom can be supposed to contemplate as that duty, the accurate performance of which is guaranteed by such bank. Morse on Banks and Banking, Chap. "Collections," 345. This doctrine has been adopted by the courts of last resort of a number of the States of the Union: Dorchester & Milton Bank v. New England Bank, 1 Cush. 177; Fahens v. Mercantile Bank, 25 Pick. 330; Daly v. Butchers & Drovers Bank, of St. Louis, 56 Mo. 94; East Haddam Bank v. Scovil, 12 Conn. 302; Stacy v. Dane Co. Bank, 12 Wis. 620; Citizens Bank v. Howell, 8 Md. 550, and in several cases in Pennsylvania. In this State also, the same rule has been adopted. In Ætna Ins. Co. v. Alton City Bank, 25 Ill. 247, it is said in the opinion: "Where a bank receives a bill or note for collection against a drawee or maker, resident at the place of the bank, or where the bank undertakes for its collection by its own officers, there can be no doubt it would be liable for any loss that might result from neglect. But when received for transmission to another place for collection, it has fully discharged its duty by sending the instrument in due season to a competent, reliable agent, or correspondent, with proper instructions for its collection." This court has adopted the same doctrine in Waterloo Mining Co. v. H. Kuenster & Co., 58 Ill. App. 61, in which all the questions material in the case at bar are fully discussed, and the conclusion reached is fortified by abundant authorities.

We find from the evidence in this case that the checks were sent to appellee to be transmitted for collection, without compensation. That appellants knew the collection would necessarily require the substitution of a sub-agent by appellee, in accordance with a known and established usage, and was not intended to be made by appellee or its officers, and hence appellant authorized such substitutions; that appellee in due season transmitted the checks, with proper instructions, to a solvent, suitable and competent corre-

spondent, in accordance with the general usage and custom among bankers in such cases, and thereby fully discharged its duty to appellants and was guilty of no negligence; that the correspondent so selected became and was the agent of appellants, and if any loss accrued to the latter by reason of its negligence, appellee incurred no liability therefor. It follows, therefore, that we hold the law to be as held by the trial court—that the propositions of law which were refused to be held, were properly refused, and the proposition modified was properly modified. The finding and judgment for defendant was right and the judgment is affirmed.